the court. May it please the court, my name is Thomas Linguanti, and I'm appearing on behalf of the appellant Abbott Laboratories, and I apologize in advance for the wonders of a late spring early summer cold. This case concerns transfer pricing, the prices charged in this case by Abbott Laboratories I think we know about all that, but let me tell you what the problem as I see it is. If you read this regulation, if the regulation were a statute, I think you'd have a pretty good argument that the statute in that hypothetical should be construed the way you want it to be construed. But I look at these cases like the recent Long Island care home case, and the Cleveland baseball, and our own decision in American Express, and these cases seem to say well if the agency has construed the regulation in a particular way, we're going to follow that construction unless it's sort of impossible to construe the regulation that way. And that seems to me the problem that you've got here is the difference between a statute and a regulation in terms of deference to agency interpretation. So would you address that? Sure. It is impossible. It is impossible. In each of the cases you referenced your honor, the question is what the words say, and is the interpretation of those words reasonable? Substantial deference of an agency's interpretation of its own regulation. Here the words don't say anything, anything that the government can hang its proverbial hat on to justify its interpretation. That's not necessarily true. I mean if the last sentence contains the words shall affect, that's the debate we are having. Sure. And it's the sixth sentence your honor, the sixth of the seven. The sixth, I'm sorry. No, I'm up. It's okay. That's certainly true. That is where the battle lines have been drawn. Absolutely true. However, the question is what does that mean? Let's talk about what that means. It means two separate things that have to be, if the interpretation is rational without the words to support it, section 65, a line or assessment, then you have to have guidance as to what that means for taxpayers. The government's position is, and the court of claims position is, is that the government must have time to make an assessment, in order for a taxpayer's refund to be sufficient or timely, must have time to make an assessment. Taxpayers have no idea. There is nothing from this regulation, nothing, that tells taxpayers for how long they must, for how long before the government makes this assessment must it file its refund claim. That's the first problem. There's no guidance at all. So if the interpretation is reasonable, it has to give taxpayers some idea as to what the rule is. For example, if the section 6501 assessment period expires on day 20, and the taxpayer files its return, or it doesn't have to make a return actually under the rules, files its letter like Abbott did here saying, we owe additional taxes on day 10. The government has said this administratively, that does not give us enough time, sufficient time to make an assessment. Therefore, you have not complied. Okay? Well then how much time is sufficient? Is it 20 days? Is it 30 days? Is it six months? Is it two months? Yeah, that doesn't do that much. Well, but it does. I'm sorry, Your Honor. But it does here. If the interpretation is reasonable, if the interpretation of shall effect is reasonable, then it has to be more than simply shall effect. And it's also the case when we ask the question, well, what is a taxpayer to do then? Because remember, the statute of limitations on assessment is a limitation on the government. It's not a limitation on taxpayers, it's a limitation on the government, the time by which the government must make an assessment. So taxpayers are in a tough spot, right? But their question is, all right, well, I need to fulfill my statute of limitations obligation under Section 6511, which is my limitation period by which I must file a refund claim. And now the government has taken its limitation on itself, turned it into an obligation on the taxpayer, but given the taxpayer no guidance whatsoever as to what it needs to do to comply with that limitation on the government. Well whatever that reasonable time might be, in this case, the request was filed after that time period. That's true. That's true. So the question of what a reasonable time period might be is not really implicated here. It's not. But it is, Your Honor. It is. Precisely to Judge Deck's question of what's a reasonable interpretation of this regulation by the agency. You have to ask, would the agency have created a rule that provides no guidance whatsoever for taxpayers to comply with? In their impossibility. It provides some guidance in that you can't do it after the fact. But even, well, even then it depends on what time you're reading the government's interpretation of its regulation. That's certainly true. But again, the issue for the taxpayer is when. When is timely? Timely? And we point this out in our reply brief as well. It's not, it's very simple to say, well you have to do it by the time the government makes its assessment. Okay. That sounds fine. Except when you ask the question, well what does that mean? It doesn't answer the question of when. This goes to... The way the government is reading it? No. Okay. What are the others? Well that's where I started, John. You know what I started with, when you look at what this is, which is the transfer pricing provision. Which is relevant to the rationality of the reasonableness of the government's interpretation. This is about what the prices are between the parties. Why does that matter to this interpretation question of attestation of deference? What is E4? Which is our regulation. E4 talks about subsequent determinations of transfer prices, commissions, and rentals. Okay. In transfer pricing you always have this question of prices between related parties. That's transfer pricing. Okay. So if that's true, then every time there's an adjustment to one party's, the amount that one party should pay the other party, there's going to be an adjustment of income and expenses. And what this regulation does, and what the correlative effect, shall effect, calls for is that when a taxpayer makes a redetermination, or changes the transfer prices, or the government makes a redetermination or changes the transfer prices, there must be correlative effect. That is a rational interpretation, and that's exactly what the sentence does in the context of E4. So it goes directly to the question, well what's this regulation about, and what's the statute about? The statute is section 925, and the regulation is 1.925A-1TE4. These are about transfer prices, income, expenses. What's the proper price between the parties? And if you're going to bring in an unprecedented, this goes directly to the heart of the Cleveland Indians type analysis, you're going to bring in an unprecedented analysis that makes a taxpayer's refund claim contingent upon the government's ability to assess another taxpayer. A rule that doesn't exist anywhere, ever. There's nothing that anyone's ever pointed to that shows that this has ever happened before. If you're going to do that in a transfer pricing provision, it has to say so. You have to make it explicit. If that's the intent of the drafters, if that's what the regulatory drafters meant, they would have had to have come forward and say, we are changing a rule that never before existed. Now if they did that, let's assume they had 65 million. If I understand correctly, let me help you. If I understand correctly, you're saying that the Field Service Advice Memorandum, which set forth the government's position on this, wasn't available to the public until what, 2000? 2000 or after. Yeah. And so the refund claim here was filed in when? 1998. 1998. So at that point, if I understand what you're saying, you had no notice about the government's interpretation of this regulation. And that if you had had notice of the government's interpretation of the regulation, you could have extended the period for assessment and at least you would have gotten the benefit to the parent minus the cost of the subsidiary. But that as a result of the failure to give notice, that option was taken away and now the government is not just taking, it is taking away entirely the benefit of the parent deduction. Right? Yes. And a little bit of both. You would have given the taxpayer a shot anyway, if you knew that's what the rule is. Right. So what case says we should worry about the prejudice to you? About notice to the- Yeah. In terms of their ability to construe this regulation in an unfavorable way, assuming that there is some evidence of prejudice as a result of that, what case tells us that we should reject the agency interpretation because it didn't give sufficient notice? Well, it goes to- Well, I cannot give you a case that, as I said to you, your honor, to the unfairness of the notice. But I can identify, we do this in our reply brief as well, the cases that say if you're going to give deference to an agency's interpretation, then its consistency of interpretation, timing of its interpretation is relevant. It's relevant. I mean, the only public statement at the time of which we're aware that identified the government's position in connection with this fiscal regulation was what it said in the Union Carbide Briefs. And it said 6501 doesn't apply. And the government's view of that and the claims court view of that, well- Is there any indication that people read the Union Carbide Briefs and relied on it? I wish the record was more clear, your honor. We have since. Right. But it was the only public statement that the taxpayers had to go on. And Union Carbide. I mean, again, going precisely to your point, your honor, Union Carbide comes out, I believe, June 14th of 1998, creating this new rule, never before seen in the revenue laws, where there's dual statute of limitations requirements for the refund statute. Section 6511 must be open for both the FISC and for the related supplier. Again, never before seen. The court says, well, maybe, but I read the regulation and I interpret the regulation consistent with a reasonable interpretation of the government's, that there's a dual rule. Okay. Abbott then, whether serendipitous or otherwise, but we know that within two weeks and a day before its statute of limitations expires as regard to the FISC, files it on time. It meets the Union Carbide rule. So as far as Abbott's concerned, it's done everything it was supposed to do, which is file its refund claim at a time when Abbott's refund period, section 6511, is open and at the time that the FISC's refund period is open under 6511, according to Union Carbide. Mr. Linguati, you're into your rebuttal. Would you like to reserve the time? Thank you very much, your honor. I would. Thank you. We'll hear from the United States. Good afternoon. I'm Francesca Tamami, Counsel for the United States. I just want to clarify what this case is about and what it's not about. The taxpayers have primarily framed this as an issue about whether the government is trying to alter the statute of limitations. You've got a problem. You've got a problem because this regulation, it really doesn't on its face read your way. There's a reference to the refund statute of limitations. It's a badly drafted regulation. Maybe it's possible to construe it your way, but the problem is it's not apparent on the face of it. It does seem to be kind of unfair to a taxpayer to say, okay, here's the regulation and you've made some decisions about claiming a refund, not keeping the assessment period open, and we're going to stick you with a later arising interpretation of this regulation, which zaps you. I mean, that seems kind of unfair, right? Well, in terms of fairness, I think, again, this is looking at what is the context of this regulation. What we're talking about here is, first of all, taxpayers have no statutory right to file an amended return that changes- We're trying to address what I'm talking about. You'll probably have some time later where you can address what you want to talk about. Well, I think what I want to talk about feeds into my answer to your question, which is basically the right to make this redetermination. There's no right in the statute to do this. This is purely something that the regulation grants this right and it defines the scope of the right. They can do it. There's nobody saying that as a substantive matter they couldn't do it. The only question is whether they did it in a timely way, and they're sitting there in the regulation and they read the regulation to say, well, okay, we don't have to extend the assessment period. The refund periods are open for both of them, so we can file. It seems to me that most people reading that regulation would have concluded that it was okay. Then you come along two years later and you say, no, in fact, that's not the way we construe the regulation. You only can file the refund application in a timely way if the assessment period for the subsidiary is still open. Under those circumstances, why should we allow this later arising interpretation to govern? First of all, I think a taxpayer reading the regulation, obviously focusing on the portion, the fourth sentence of the regulation that addresses 6511 might say, okay, well, I still have time to file this piece of paper, my refund claim, but then reading further in the regulation, the taxpayer confronts the question of, well, wait a minute, what does this mean that the redetermination must affect the related supplier as well as the FISC? If the taxpayer knows, as Abbott Labs did, because it filed its refund claim six months after the assessment period had closed for its FISC, if the taxpayer says, well, let's see, the IRS will not be able to assess additional tax against the FISC because the assessment period is closed. I wonder how the taxpayer views itself as meeting the shall affect language in the regulation, particularly in the context that this is a Treasury regulation. It was issued by the Treasury Department. The taxpayer's attorney was talking about- Their attitude is if they wrote it stupidly and didn't write it the way as a matter of policy it should be written, that's their problem, and we're allowed to take advantage of it, which is the general rule in the tax area. Well, I guess, would the agency have crafted a rule that would enable taxpayers to whipsaw the government by filing refund claims, claiming a redetermination after the assessment period has expired? People make mistakes. Well, as the Court of Federal Claims acknowledged in this case, it's on A17 of the appendix, that the IRS had suggested that this was the correct interpretation of the regulation in Revenue Ruling 8281. That addressed the rules for redeterminations for disks, which was the predecessor entity of FISCs. In Revenue Ruling 8281, it said that the redetermination could be made as long as the parent and the disk timely filed amended returns. The regulation- That's 1982, well before any of the events in this case. Later, when the statute was changed to create this new entity, the FISC, the regulation was also modified to add this language, that any redetermination shall affect the FISC and the related supplier. In the 1999 FSA, the IRS sort of clarifies why the language of the regulation doesn't explicitly say the redetermination must be filed before the 6501 period expires. The explanation in that FSA was that the IRS wanted it to be more broad than that. It didn't want the ability to do the redetermination to be limited to the taxpayer being able to file an 11th hour redetermination without giving the IRS sufficient time to actually look at it, to put on the IRS's radar screen. The regulation, which again is the sole source of the right to even do a redetermination, puts the burden on the taxpayer to make sure that everything is filed in time to give the IRS the ability to assess the tax, to make an investigation, so that the redetermination does affect the FISC. What is the government's position on the deference to which this regulation is owed, given the fact that the notice was not in place at the time when the request for refund was filed? Well, the government, we believe that the Court of Federal Claims was correct in giving deference to the IRS's interpretation, although that wasn't our primary argument in this case. I mean, our argument in this case is that when you look at the regulation, which by its terms, it's not clear and unequivocal, but when you look at the context of the FISC regime and the fact that the FISC provisions and regulations were structured in an attempt to resolve problems with the DISC regime, resolve the problem that the DISC benefits were laxly enforced, according to the Court of Federal Claims, that this language should be read in the context of what Congress was trying to do, which is not to grant undue tax benefits for these taxpayers. So to read the regulation in a way that would allow a whipsaw simply is inconsistent with the effort to rein in the tax benefits that were allowable under the FISC regime. I don't know that there's any whipsawing going on here, but the question goes back to the observation Judge Dyke made earlier that our precedent is pretty clear that IRS regulations like this are normally given significant deference, almost to the point of being insurmountable. But the question is, to what extent is that deference affected by the fact that the regulation, the interpretation, was not made known to the taxpayer at the time? Well, again, as I mentioned before, there was a suggestion that this was the proper interpretation in Revenue Ruling 8281, but also the Supreme Court in the case of Auer, which is cited by the Court of Federal Claims, and it's at 519 U.S. 452, also indicated, I mean, we have a case of first impression here. In that case, the Supreme Court said that the agency may be entitled to deference with respect to a position that's expressed for the first time in a brief. In that case, it was an amicus brief, and the court there said that there was no reason to suspect or to think that the agency hadn't held the belief that was expressed for the first time in this brief. They weren't addressing the question of prejudice in Auer, were they? Pardon? They weren't addressing the question of prejudice in Auer. They were not addressing the question of prejudice, but- But Judge Lynn's asking you, what difference should it make that there's prejudice and a failure of notice? Is that something we can take into account? I mean, there are general rules against retroactivity. Bowen's Supreme Court's decision in Bowen says that that's going to apply to the agency context also, so we should worry about retroactivity. Should we worry about retroactivity when we're confronted with an agency interpretation of its own regulation, which is issued after the fact? And you're essentially asking, let's make that retroactive to the time the taxpayer filed a return. Well, the regulation was always there. The interpretation suggested in the 1982 revenue ruling was always there. Well, let's assume we reject that, okay? Let's assume we say, okay, without the IRS interpretation, we would view this regulation as not applying in this situation according to the government's interpretation. We think that that would be a strained interpretation of the regulation, okay? And we say, the only way we can rule for the government in this case is applying the Cleveland the IRS did, then the IRS wins, okay? It's a very loose and lax standard. And the question is, does it make a difference that that interpretation came after the fact? I mean, I don't think so because there's always the first case. There's always the first time the regulation, the particular language is interpreted. So that would mean that every time you have the first case that you're looking at this regulation, that the agency's interpretation wouldn't be given deference. I mean, also in terms of prejudice in the particular case, we're talking about the taxpayers seeking here to retroactively enhance a tax benefit, a tax exemption. It got over $130 million worth of these Fisk Commission deductions on its first tax return. There was nothing wrong with the way the first tax return was done. It, this regulation gives the taxpayers a narrow right to further enhance that tax benefit after the fact, if it meets strictly all of the terms of the regulation. So in terms of prejudice here, we're not talking about there was a mistake that they can no longer fix, that they're out of pocket any certain amount of money that they already paid to their fists, that they now, they're not able to take the tax benefit of that money. This is purely a tax driven exercise and an attempt to increase the tax benefit. I mean, you know, the way it is. That's what people do. They try to reduce the taxes as Justice Brandeis seemed to view that as a civic duty. People are allowed to do that, right? Okay. Question is whether it was timely. I guess my answer to your question is that there's always going to be the case of first to issue a revenue ruling or a notice containing its interpretation of the provision. And there's no reason why the agency's regulations should be entitled to less deference in that particular case where the taxpayer was not on prior notice of the agency interpretation. I should also point out there's the revenue ruling from 1982. There was also a notice that was issued in 1992 that I believe is also, I don't have the site right in front of me. But that also indicated that the related supplier could not make a unilateral redetermination. The redetermination would have to be made at a time while the period was open for both the FISC and the related supplier. Now, while none of these pronouncements brought the issue into focus the way that this case has, I think there was enough out there to give the taxpayer pause to read, well, what does the shall effect language actually mean? And if it doesn't mean what the government says it means, then the taxpayer here is arguing, well, the shall effect just means that we have to make some accounting entries. But there's different regulations that already require those accounting entries. I mean, in this case, basically, if the taxpayer was free to interpret it the way it has as not affecting the tax that the FISC would pay, the meaning of the regulation would basically be rendered meaningless in a case where the FISC's assessment period has already closed. I just also wanted to say one thing about the timing in this case, because my opposing counsel said a lot about, would the agency craft a regulation that would leave the timing unclear for taxpayers? They wouldn't know when to file a redetermination. And I would just like to point out that that's something uniquely within the taxpayer's control. Only the taxpayer knows whether it will be filing a redetermination. And it can't be up to the IRS to guess whether a related supplier and a FISC are going to do a redetermination so that it can then seek an extension just in case. The domestic manufacturer here is the 100% parent of the related supplier and is uniquely positioned to seek an extension or to file the redetermination with enough time to allow the IRS to then know the redetermination is in the works and ask for an extension itself. Any final comments? Unless the court has further questions. Thank you very much. Mr. Lombardi, you get the final word. Thank you, Your Honor. If I may just briefly, first, since counsel, to address the question I failed to address initially, which is what are the cases, of course, that stand for unfair surprise, and that Your Honor mentioned them, Long Island as well, Long Island Care, as well as actually Hath v. Pete from this court. What was interesting about Long Island, which I took a moment to refresh my recollection, was that it was a case where the government actually had been switching its interpretations of the regulation over time. It had been changing. But ultimately, the court said, however, the interpretation that is currently before it is one that's been longstanding and thus did not create any unfair surprise to the taxpayer. Cleveland Indians was the same kind of case, if you recall, where there was a longstanding interpretation of the government's hanging out there and thus did not create any unfair surprise. So the point's a fair one, and it's on the nose of our issue here and Abbott's ability to do what the government says it's supposed to do. The government refers to the Revenue Ruling 8281, which was after a number of years of wrangling internally at the Internal Revenue Service about whether, in fact, under the old International Sales Corporation regime, DISC regime, taxpayers could file a redetermination. And it ultimately came down to the view that it could, and it did say that there must be correlative adjustments. That's 8281, the Revenue Ruling. What happened after that? The FISC provision, the E-4 regulation, is enacted and promulgated. And what does it do? It has now expressed that the 6511 statute of limitations is what is required to be open. And it's also expressed that the MISP shall affect both parties. So as far as a taxpayer such as Abbott or any taxpayer at the time trying to interpret what it's supposed to do to comply said, OK, well, now I'm supposed to make sure that I hit my 6511. I can file a redetermination, a change in my transfer prices. I have to do so within my 6511 period, and I have to make sure that, like any transfer pricing case, I'm making correlative adjustments. And it's not a bookkeeping entry. We never say that it's a bookkeeping entry. We say it's about income and expenses. And it's what Subtitle A of the Internal Revenue Code is all about. The Internal Revenue Code is Title 26. It has subtitles. Subtitle A is all about income and deductions. So whether or not my wage income counts as gross income, whether or not my charitable contributions are deductible expenses, that's Subtitle A. Whether my transfer prices are appropriate is Subtitle A. My FISC is Subtitle A. 925 is Subtitle A. That's how the Internal Revenue Code and the Treasury regulations work. That's a meaningful—the government makes this issue as well. Was that a meaningful adjustment? Well, yeah, it's meaningful, whether or not I have taxable income or not, and how much. Subtitle F is procedures and administration. Whether I have an overpayment for which I can seek a claim for refund, Subtitle F. Whether the government has an underpayment for which it can seek to collect, Subtitle F. And in E4, the regulation that we're all talking about, the government made the thoughtful determination of making sure that it expressly brought in the subtitle F reference 6511 into its regulation. It did not bring in Section 6501 to create a new rule. It did not bring in assessment. Any final comment? Just lastly, and the Court dismissed this quickly, but I feel compelled to say this, since Judge Allegred was compelled on this issue. There was no whipsaw here, and there certainly was no intent to whipsaw here. The government could have protected its interest to keep its statute of limitations open on assessment. It did not. It's not unilateral. I guess it's possible that you waited to file the thing until it was too late for the government to do anything about it. We don't know whether that happened. Well, we certainly filed our refund claim within one day of our own statute of limitations. That is true, Your Honor. That is true. And then also, as we point out, the defense of equitable recruitment remains available to the government, as the taxpayer has maintained throughout this case. I thank counsel from both sides. The case is submitted. That concludes the arguments for today. All rise.